21-2011 Karen Villa-Castro v. Merrick B. Garland My name is Attorney Kimberly Williams. On behalf of Rubin-Pomelo PC, I represent the Daniel Ramirez-Salas. I'd like to reserve two minutes for rebuttal. You may. This morning we're here seeking remand and it's warranted for three reasons. First, because the legal standard for determining what qualifies as past persecution in this case was not followed and as a result, an erroneous determination that the petitioner's asylum application was under that erroneous standard and under that legal erroneous standard, they also inadvertently weighed the application evidence incorrectly under that standard and did not include certain evidence that should have been weighed. Thirdly, they also determined that there was not a well-founded fear of future persecution because of the also illegal and erroneous standard that was put forth. I will start with the first of these under past persecution. So admittedly, this Court probably struggles the most throughout all of the cases that they do through asylum, if not through trying to determine what past persecution is, but also the cognizability of social groups. It's probably the top two things that this Court issues decisions on when it deals with asylum cases. So over the years, there's been a bit of inconsistency as to what this standard is, and this Court has put out a number of cases. However, there still is some fairly straightforward standards that the Court has put forward, and one of those standards is that persecution in and of itself can be physical, sexual, psychological, emotional in nature, and that death threats, credible death threats most certainly is first and foremost amongst them. This Court has also found in determining amongst death threats that they don't have to encompass more, but when they do also encompass other menacing types of harm, that that in and of itself can potentially be found to be past persecution. And in this case, the evidence that was presented by the petitioners under the legal standards that were presented forth by the Respondent's Council, Petitioner's Board, it definitely rose to the standard if the evidence had been weighed under the proper legal standards. And here, that wasn't the case. The agency essentially took the IJ's decision without any de novo review and simply affirmed it. And in doing so, they found that it was simply three isolated incidents. And below, the IJ had actually said that at least two of the three most certainly had a connection to a nexus. But they said that they did not believe that the first of them was actually a targeted incident. They said it was an isolated incident, but that the two looked to be targeted based on a protected nexus mostly through a political opinion, potentially through familial, but most definitely through a political opinion. So in this case, the second of the third targeted grounds was a death threat. In determining and weighing that evidence, simply all that was put on the record by the agency was that it was a death threat. There was no determination of what the content of the death threat was. There was no determination of how the actual death threat affected the petitioners below, just that it was a death threat. And then they went on to analyze the third incident, which was a targeted stoning, throwing sticks at the lead petitioner at a political event. And physical harm was done, but it was assessed that this wasn't severe enough harm to the lead petitioner. You're not challenging that last conclusion, are you? No, we are challenging it. So if that was all that had happened, you would say there was persecution? We're challenging it together. I understand. You're not challenging the conclusion that the throwing incident alone constituted persecution. Which, I apologize, I'm not sure I'm understanding which incident you're talking about. The last incident of the throwing of the sticks and the rocks. Are you contending that alone would suffice to rise to the level of persecution? We say alone it would, and in the aggregate it would together, yes. Because we're saying that she was injured during that incident. What was the injury? She was injured. I mean, they said that there was no bruising through the injury, but she was injured. She was harmed. She was hurt. And psychologically, she was also hurt. Because this is the last of the three incidents. This is an escalation. This is an ongoing escalation. What's the best authority of ours that you have for the last incident alone qualifying? For that? So, for that one, I would say, apologies, Your Honor, I would probably say for that one, it would be probably Garcia Cruz, I believe, or possibly Bonilla Mukasey. Okay. But in this respect, we're also arguing together. It's a cumulative. Because the death threat came second. It was a severe death threat. I'm not going to read out loud because, frankly, it's vulgar. But the death threat itself was also taken to the Interior Ministry. And when they were arguing at the Interior Ministry, she also provided a second declaration about how the declaration in and of itself was... Just to be... There's no finding in the record, and you're not challenging the failure to make such a finding, that the persons involved in the rock throwing and the sticks incident were the persons involved in the death threat. No, they're not saying that it's the same person, but they are noted to be opposition members of the political party, but they're being alleged to be different people. So, it's part of the same ongoing threat, but alleged to be different people that are participating in it. And working in concert? There's no finding of that? There's no finding of working in concert, no. But it is an ongoing threat that was being alleged. And the IJ found that it was a nexus. So, they did find that if they had found that it was... It's your political opinion, but not to each other. Not to each other, yes. So, the IJ had found that if she had found that they had risen to the level, she found that there was a nexus and there was a connection there. And the board did not disturb that finding. So, at least in that respect, there was a connection between them. Nick, could you just address the unable and unwilling? The unable and unwilling, yes. So, in this respect, the petitioners had actually gone to the police when they got the death threat letter, initially. And they had tried to file a police report. But because they couldn't personally identify the exact person that had left it on their home, they initially refused to investigate. So, after waiting for a little bit, trying to figure out what to do, then they had filed a report with the Interior Ministry there in Peru. And the Interior Ministry in Peru did actually authorize some protection. But because the police were still unwilling to investigate, they basically gave up. And at this point in time, the lead petitioner had already left with her daughter from Peru and one of the children from Peru. There were initially four people involved in this case. And the husband and one of the other children stayed behind. And they were still under threat, trying to stay protected while they were trying to secure enough money to leave. But in total, the police never fully investigated the case during this entire time. They submitted police reports and had testified why they didn't follow up with the police further because they had tried to investigate. So, under this court's precedent, under Justo Rosales, it's not a matter about whether you initially try and they just give up. It's an either or. They could try to initially investigate, but if they don't follow through, they fail. Even if they're initially willing to investigate, but if they can't figure out who it is that is doing it, they can't ultimately protect you. Thank you. Any further questions? No. Thank you. Thank you. Thank you, counsel, at this time. Would counsel for the respondent please introduce himself on the record to begin? Hello. May it please the court, my name is Jesse Lorenz and I represent the Attorney General of the United States. This court should deny this petition for review. Petitioners base their claim for asylum on three isolated incidents of harm. A 2013 motorcycle accident, a 2014 anonymous letter, and a 2014 election day skirmish between opposing parties. They did not establish that these incidents compel a finding of past persecution or a well-founded fear of future persecution. Petitioners, as required for past persecution, did not show that these incidents were connected in any manner, much less that they were part of a systemic or pervasive attempt to harm them for their political views or familial ties. For example, petitioners contend that their daughter was targeted during a motorcycle accident in 2013, but they support this assertion with no proof of their own other than speculation. Indeed, petitioners themselves conceded below that they did not initially think that this attack had anything to do with Putting the attack aside, what about the relationship between the second and the third incident, the threat and the stick throwing? So you're talking about the threatening letter, and I don't think petitioners contended anywhere in the record that maybe their attorneys did, but petitioners themselves, there's no testimony that those incidents were connected. They didn't claim that they were connected in their written statements. I guess it's just a question of levels of connection. So with respect to the motorcycle incident, the idea is we have no idea why it happened. Right. But we know from the content of the letter itself that the reason it's happening is because of the political opinion being expressed. Well, I would say And no one's disputing that the third incident was also motivated by the political opinion. No, the government's not So in that sense, there's a connection of activities related to public opinion. Is that enough? If it's not enough, why is it not enough? Well, Your Honor, I don't think it's enough because the third incident, there was no showing that it was actually targeted directly to petitioners specifically. It sounded like there was a large group on both sides. There was some stick throwing. The boat that they were on wasn't able to land. Nothing specifically seems like it was specifically directed towards the petitioner. There's also no showing that there's any harm to petitioner. Well, no, I recognize that argument. I'm just trying to get the sense of whether there is a connection between the death threat letters. There's two letters, I take it? Well, according to our testimony, only one letter. Only one? Yeah. So the one letter and then the second incident, the final incident. Sure. But again, this is petitioner's burden right now to show that the record can be held. Well, I'm saying why doesn't the record show that the connection is that each was motivated by the political opinion of the target of the activity? Well, I think that the immigration judge found that they were motivated by political opinion, but that So why is that connection between the two not enough to establish that a person having that political opinion was being targeted, she was being targeted for having that opinion? Again, before I answer the question, I'd like to note that what they have to show now is that the record compels a conclusion before this court. But secondly, I think that she had to draw a connection between the two incidents and there's nothing on the record. And third, there's nothing on the record that shows persecution requires that you be specifically targeted, not that you were involved in some large skirmish. She hasn't shown anyone at that 2014 Election Day skirmish was specifically targeting her. She said there are many people on both sides. The testimony and statements indicate that it was just a skirmish and that they left. There's really nothing else to it besides that. And again, this is her burden before the agency to show that these were connected, and now it's her burden before this court to show that the conclusion is compelled that they were connected. And I just don't think there's anything there to show that conclusion. The government believes that these were all isolated incidents that drew no connection to each other. Can you just address the unable and unwilling? Yes, Your Honor. So because they didn't establish past persecution, they had to show a well-founded fear of future persecution. They didn't show that the proven official... I thought for the past persecution they would have to show, since it was they're all complaining about private action. Right. Even as to past persecution, they can only win if they can show that the government was unable or willing to stop the actions in question. That's right. Your Honor, so they have to show some sort of connection to the government, right? Yeah. And here they don't do that because... And what about the argument on the other side that they did do that with respect to the threats because the record shows that they brought it to the attention of authorities and the authorities wouldn't investigate? Well, I don't think that's a fair reading of the record, Your Honor, because it looks like they brought it to local authorities. The local authorities told them that they couldn't do anything because it was an anonymous letter. They then took it to, it sounds like, a federal authority. The federal authority wrote them an order of protection and instructed them to bring it back to the local authorities, and they declined to do that, thereby not giving the government a chance to act. And besides that, Your Honor, what fundamentally undermines their claim is that the objective reasonableness is substantially undermined by the fact that the two political candidates that they supported, who are family members, remain in Peru and there's no allegation of harm. And that's a big issue with regard to their fear of future persecution. So I think that undermines substantially their alleged fear of future harm in the country of Peru. Your Honor, if there are no further questions, the government submits. Yes, I do have one. On the Cat claim, where the BIA essentially said that they haven't established that they likely would be tortured at the hands of the government, it seems to me that we recently rejected a very similar conclusory finding in, I think it was Hernandez-Martinez just a couple of months ago. Why shouldn't we, for tenery purposes, given that the government made several arguments to the BIA, we don't know whether it accepted any of them or what it did. It just made this conclusory statement. Why shouldn't we remand for a fuller explanation? Well, first of all, the agency is entitled to a presumption of regularity that it considered all of the evidence and arguments before it. Second of all, I think the immigration judge's decision, which the board agreed with as regards to the Cat claim, thoroughly addresses the Cat issue. Do you think that the IJ thoroughly addressed it? Well, I think, I mean, the Cat claim and the asylum withholding claims are all based on the same set of factual allegations, right? So although the standards are different, an unwilling and unable to protect is going to rely on the same evidence and facts as a consent or acquiescence determination. So I think in that regard, I think this court can rest assured that that was fairly considered and thoroughly considered by the agency. And I personally, or the government, doesn't think there is any reason to remand for further consideration of the Cat claim. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the petitioners please reintroduce herself on the record? She has a two-minute rebuttal. Good morning, Your Honors. Attorney Kimberly William for the petitioners. So I'd like to pick up briefly on the point that counsel just made. So I think, because I didn't get a chance to address this earlier, I was focusing on the other two points. I think that to Judge Howard's perspective, I think this should actually go back to have a remand on the Cat. We did argue this in our brief. It wasn't a point I was going to raise today because we have other points to address. But, I mean, this is something where there wasn't, it was a very, you know, conclusory review on this point. And there wasn't a whole lot done on the entire decision. And I think from this perspective, there wasn't a lot addressed. We did raise a lot in the review of the country reports, you know, in terms of whether or not the government would actually protect them in this respect. So for that point, I would argue that remand should be done simply on the Cat. Well, I think, but counsel, I think, I mean, the IJ at least did address the country condition issue. Yes, but I think part of the issue is just simply because, and we argued this in our brief as well, simply because a country has free and fair elections doesn't necessarily mean that they're going to protect their citizens from all of the ills that happen to them. We argued the point that violence can occur in a country and their police officers don't protect them and a lot of crimes can be committed against them, but just because they have free and fair elections, I mean, our own country has suffered this problem during the Trump administration and the turnover of our own power here in our own country. A lot of violence was committed against our own citizens and we would argue we had free and fair elections here. What's in the record that supports the Cat claim in such a salient way that the way it was treated by the IJ and the BIA is too cursory? I mean, it has to be the case that some instances Cat claim could be put forward in terms where by the time we're done analyzing the asylum, it's pretty clear that the courts of the view that it's not a very strong record. So our argument was just generally for the whole asylum claims that there was starting to be an escalating pattern of behavior towards our clients, the death threats, they were coming after the lead petitioner when she was out doing campaigning activities, and there was a real concern for her life and safety and the life of her family that the police were doing nothing to protect them. And that was our main argument. And the argument that the IJ also made about one of the family members being in control at the time and why couldn't they just offer protection, he wasn't actually elected yet. And that was a misconstruing of the record and what was happening when the arguments were being made. Thank you. We rest on the record. Thank you. Thank you, counsel. That concludes argument in this case.